IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02820-WYD-CBS

GARTH KOELLHOFFER, on behalf of himself and all similarly situated persons,

     Plaintiff,

v.

ELIZABETH PLOTKE-GIORDANI and LUIGI GIORDANI, both individuals; and I
SCOPPIATI, INC., d/b/a Campo De Fiori Ristorante, a Colorado corporation,

     Defendants

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' F.R.C.P. 56 MOTION
FOR SUMMARY JUDGMENT**

---

Plaintiff, through undersigned counsel, respectfully submits this response in opposition to

*Defendants' F.R.C.P. 56 Motion for Summary Judgment,* **[Document #46]** (the "Motion").

**I.  RESPONSE TO MOVANT'S MATERIAL FACTS**

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Denied.  The referenced quotations record statements made by Defendants to the

United States Department of Labor ("USDOL") investigator and do not constitute the

investigator's findings or conclusions.  Moreover, the statements are contradicted by Mr.

Koellhoffer's testimony; (Declaration of Garth Koellhoffer at ¶¶6-10), attached hereto as Exhibit

1, as well as by Defendants' discovery responses, which incorporate a description of the manager

position.  (Def.s' Disc. Resp. at Interrog. No. 13 and CDF000047), attached hereto as Exhibit 2,

(the "Manager Job Description").

18.     Denied.  *Manager Job Description*; (Koellhoffer Decl. at ¶10).

19.     Denied.  Defendants' citation does not support the proposition.  Although the

investigator did not pursue the matter further, there was no affirmative finding of compliance.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Denied.  As explained in Section III(C), below, there is a disputed issue of fact as to whether Defendants fully disclosed information to the USDOL investigator.  (Koellhoffer Decl. at ¶¶6-10); *Manager Job Description*.

## II.  STATEMENT OF ADDITIONAL DISPUTED FACTS

1.     As an upscale "destination restaurant", most of Campo De Fiori's customers are domestic and international tourists.  (Koellhoffer Decl. at ¶2).

2.     Campo De Fiori obtains a substantial portion of its supplies from domestic suppliers and international importers, including fine meats, fish and cheeses, wines, sparkling water, olive oil and liquors.  (Koellhoffer Decl. at ¶3).

3.     Campo De Fiori's chefs and bartenders use cooking equipment and supplies purchased from outside Colorado to combine the various domestic and international ingredients discussed above into meals and drinks that are served to customers.  (Koellhoffer Decl. at ¶4).

4.     Most of Campo De Fiori's customers pay by credit card and, while working there, Mr. Koellhoffer frequently took credit card payments.  (Koellhoffer Decl. at ¶5).

5.     During his employment, Mr. Koellhoffer spent most of his work time handling wines, liquor and food from around the world and serving out-of-state and international customers.  (Koellhoffer Decl. at ¶5).

6.     Defendants' managers are responsible for interviewing, hiring, firing, disciplining, training and evaluating employees.  *Manager Job Description*; (Koellhoffer Decl. at ¶¶9-10).

7.     Managers are in charge of operations during business hours.  *Manager Job Description*; (Koellhoffer Decl. at ¶¶8-9).

8.      Even while assisting other employees with customers, managers remain responsible for management.  *Manager Job Description*; (Koellhoffer Decl. at ¶8).

9.      Managers supervise employees, direct and delegate work and have discretion to determine how and when they perform their managerial work.  *Manager Job Description*; (Koellhoffer Decl. at ¶¶8-9).

10.     Managers prepare work schedules and determine when and where other employees work.  *Manager Job Description*; (Koellhoffer Decl. at ¶9).

11.     The individual Defendants/owners rarely are in the restaurant and have little involvement in the day-to-day management of the restaurant, a responsibility that is filled primarily by managers.  (Koellhoffer Decl. at ¶7); *Manager Job Description*.

12.     Defendants did not notify Mr. Koellhoffer of their intent to take the tip credit against his minimum wages.  (Koellhoffer Decl. at ¶11); (Def.s' Disc. Resp. at Interrog. No. 11).

## III.  ARGUMENT

**A.      The Court Has Jurisdiction Because Defendants Were "Engaged in Commerce".**

In the statute's original form, jurisdiction under the federal Fair Labor Standards Act, §201, *et seq.*, ("FLSA") arose only with respect to a particular employee who was himself "engaged directly in interstate commerce or in the production of goods for interstate commerce." *Tony and Susan Alamo Foundation v. Sec. of Labor,* 471 U.S. 290, 295 n. 8 (1985).  In FLSA parlance, these jurisdictional grounds are known as "individual coverage".  *Id*.

In 1961, however, Congress "substantially broadened the scope of the [FLSA] to include any employee of an enterprise engaged in interstate commerce", whether or not the particular employee individually was engaged in commerce.  *Id*.; *Polycarpe v. E&S Landscaping Serv.*

*Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010).  This expanded basis for jurisdiction has come to be

known as "enterprise coverage."  To establish FLSA jurisdiction, an employee can rely on

individual coverage *or* enterprise coverage.  *Id.*

Here, Defendants have confused individual and enterprise coverage and have focused

solely on whether Mr. Koellhoffer individually was "engaged in commerce".  Defendants have

failed to consider whether, regardless of Mr. Koellhoffer's individual status, all of Defendants'

employees are covered by the FLSA on enterprise coverage grounds.

Enterprise coverage applies any time "an employer ha[s] two or more workers engaged in

commerce or the production of goods for commerce . . . ."  *Polycarpe*, 616 F.3d at 1220.

Moreover, under the so-called "handling clause" of the FLSA, a restaurant also will be covered if

it has employees "handling, selling, or otherwise working on goods or materials that have been

moved in or produced for commerce by any person . . . ."  29 U.S.C. § 203(s)(1)(A); *Polycarpe*,

616 F.3d at 1220.[1]  In other words, to establish enterprise coverage jurisdiction, Mr. Koellhoffer

need only demonstrate that Defendants' restaurant uses interstate equipment, materials or

supplies.  *Polycarpe*, 616 F.3d at 1225 ("[W]here a restaurant uses interstate cooking equipment

as an article to perform its commercial activity of serving food, the restaurant is engaged with

'materials' that will subject the business to FLSA coverage.")

It is undisputed that numerous interstate (and international) goods and materials were

purchased and used by Defendants in providing service to customers, *e.g.*, cooking equipment,

food, wine and liquor.  (Koellhoffer Decl. at ¶¶3-4).  These materials were ordered and paid for

---

[1] In addition, to be covered, a business must have more than $500,000 in gross annual receipts.
Defendants admit their business meets this threshold.  (Mot. at 7).

using the interstate mails and telephone service and ultimately were sold to customers from

around the world, who paid using interstate credit cards.   *Id*. at ¶¶2,4-5.   As a result, FLSA

enterprise coverage applies and the Court has jurisdiction over Mr. Koellhoffer's claims

(whether or not he individually was engaged in commerce).[2]

       To challenge jurisdiction, Defendants rely solely on *Russell v. Continental Rest., Inc.,*

430 F.Supp.2d 521 (D.Md. 2006).   In *Russell*, however, enterprise coverage was not at issue

because the undisputed facts showed that the defendant's gross receipts did not exceed $500,000.

*Id*. at 524.   Therefore, the "engaged in commerce" analysis in *Russell* concerned only the

application of individual coverage to a single employee.   *Id*. at 524-525.   *Russell* is irrelevant

here when the issue is the application of enterprise coverage to a restaurant whose gross annual

receipts far exceed $500,000.

**B.      Defendants Failed to Satisfy the FLSA Tip Credit Requirements.**

       **1.      Construction and Burden of Proof**

       The FLSA is liberally construed and all ambiguities are resolved in favor of employee

protection.   *Myers v. Copper Cellar Corp*., 192 F.3d 546, 549 n. 4 (6th Cir. 1999) ("Because

Congress designed the FLSA to remedy disparities in bargaining power favorable to employers,

the courts narrowly construe the provisions of that statutory scheme . . . in the employee's

favor.")

       Moreover, given the legislative goal of employee protection, workplace disparities in

bargaining power, and the policy in favor of liberal construction, "[t]he employer bears the

burden of proving its entitlement to the [tip] credit."   *Dominguez v. Quigley's Irish Pub, Inc*.,

_____

[2] Mr. Koellhoffer's Declaration also demonstrates individual coverage.

2011 WL 2038728, *15 (N.D.Ill. 2011); *Whitehead v. Hidden Tavern, Inc*., 765 F.Supp.2d 878, 881 (W.D.Tex. 2011); *Ash v. Sambodromo, LLC*, 676 F.Supp.2d 1360, 1369 (S.D. Fla. 2009) ("Unless the employer satisfies its burden of showing the applicability of the tip credit, the employee is entitled to the full minimum wage for every hour worked.") citing *Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 467 (5th Cir. 1979); *Bernal v. Vankar Enterp., Inc.,* 579 F.Supp.2d 804, 808 (W.D.Tex. 2008); *Myers*, 192 F.3d at 549 n. 4.  As a result, "at the summary judgment stage, [Mr. Koellhoffer] must merely point out that the evidence in the record is insufficient to support [Defendants'] entitlements to tip credits." *Bernal*, 579 F.Supp.2d at 808.

2.     **It Is Illegal for Managers to Take Server Tips.**

Mr. Koellhoffer generally agrees with Defendants' formulation of the "tip credit" concept.  (Mot. at 9).  Under the FLSA, the tip credit is invalidated, and must be refunded retroactively to Mr. Koellhoffer, if Defendants required Mr. Koellhoffer to share any portion of his tips with his "employer." *Myers,* 192 F.3d at 550-5 (participation of kitchen workers in tip pool entitled other servers to refund of the tip credit); (Mot. at 9-10).   Defendants admittedly required Mr. Koellhoffer to share his tips with managers.  (Mot. at 3).  Therefore, the question before the Court is whether Defendants have proven their restaurant managers were not Mr. Koellhoffer's "employers", as that term is defined in the FLSA.

The FLSA's definition of "employer" is extremely broad and includes, in addition to business owners, "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  (Mot. at 10); 29 U.S.C. §203(d).  Thus, Defendants violated the FLSA if they took tips *or* if they required Mr. Koellhoffer to share his tips with Defendants' agents, *i.e*., those acting in Defendants' interest in relation to Mr. Koellhoffer.

In drawing a line between true employees and those who are FLSA employers/agents, courts have focused on whether the challenged employee: a) was involved in the hiring, firing or disciplinary processes; b) had control/supervisory responsibility over employees; and/or c) was involved in determining employee pay. *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 802 (E.D.Ark. 1990). Once a particular employee is deemed to be the owner's agent, that individual is expressly prohibited from participating in a tip pool. *Id.* There is no exception to this rule – in the statute, in the case law or otherwise – for an agent who also provides some level of customer service. *Wajcman v. Inv. Corp. of Palm Beach*, 2008 WL 783741, *3 n. 1 (S.D. Fla. 2008) ("[T]he practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping.") Therefore, the only question is whether Defendants' managers were acting "directly or indirectly" in their interest in relation to Mr. Koellhoffer. If so, Defendants violated the FLSA tip credit requirements.

There is considerable evidence in the record to establish that Mr. Koellhoffer was required to share tips with Defendants' agents. In particular, in response to Mr. Koellhoffer's interrogatory asking Defendants to describe the "duties and responsibilities" of the management position at their restaurant, Defendants produced "a complete job description for the management position". (Def.s' Disc. Resp. at Interrog. No. 13), attached hereto as Exhibit 2. The Management Job Description states that, in addition to generally overseeing operations to ensure guest satisfaction during business hours, managers are responsible to: a) "interview, hire and fire as needed"; b) "monitor employee performance and prepare evaluations in accordance

with company policy"; c) create the work schedule; d) "inventory and order supplies"; e) assist

with advertising; and f) "prepare and maintain the annual operating budget".

In his Declaration, Mr. Koellhoffer further describes these responsibilities and testifies

that Defendants' managers were the ultimate authority at the restaurant, even when assisting with

customers. (Koellhoffer Decl. at ¶¶6-10). In fact, the individual restaurant owners were rarely

even in the restaurant , *Id*. at ¶7, – presumably because they relied on their managers to protect

their interests.

Given the foregoing, disputed fact issues remain regarding the scope of responsibility

Defendants delegated to their managers. Defendants have not met their burden of proving their

managers were not also their agents.

### 3.        Defendants Failed to Provide Notice of the Tip Credit.

Defendants also have failed to prove that they satisfied a second prerequisite to taking the

tip credit: notice to Mr. Koellhoffer. *Kilgore v. Outback Steakhouse*, 160 F.3d 294, 298 (6th Cir.

1998); *Reich v. Chez Robert, Inc*., 28 F.3d 401, 403 (3rd Cir. 1994). At no point did Defendants

notify Mr. Koellhoffer that they were taking the credit. (Koellhoffer Decl. at ¶11). Since this

failure also invalidates the tip credit and entitles Mr. Koellhoffer to reimbursement, *Kilgore*, 160

F.3d at 298; *Reich*, 28 F.3d at 403, summary judgment must be denied, even assuming, for the

sake of argument, that Defendants' managers were not acting in Defendants' interest.

### 4.        The USDOL Investigation Is Entitled to No Deference.

According to USDOL, "[t]he ultimate decisions on interpretations of the [FLSA] are

made by the courts." 29 C.F.R. § 785.2. Thus, Courts are to defer to USDOL interpretative

regulations "only to the extent they have the power to persuade." *Fowler v. Incor*, 2008 WL

2019598, \*7 (10th Cir. 2008) citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138, (1944).

"Similarly, the courts are not bound by informal administrative opinions; instead, 'interpretations

such as those in opinion letters – like interpretations contained in policy statements, agency

manuals, and enforcement guidelines, all of which lack the force of law – do not warrant

*Chevron*-style deference.'" *Id*. citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

Here, Defendants are asking the Court to defer to the results of a field investigation – the

notes and conclusions of a single USDOL investigator.[3]  Such an investigation does not even rise

to the level of an opinion letter or other statement of agency enforcement policy and, therefore, is

entitled to no deference whatsoever (particularly given the typical caseload of USDOL field

investigators, which often results in a "triage" approach to enforcement).  In other words, the

Court must evaluate Defendants' tip policy *de novo*.

**C.     Defendants' Conduct was "Willful" Within the Meaning of the FLSA.**

Defendants argue that, even if their tip policy violated the law, the violation was not

"willful" under the FLSA.  (Mot. at 12).   Defendants argue that they believed the tip policy was

FLSA compliant because USDOL failed to find a violation.  *Id*.

As an initial matter, it is important to recognize that the existence of "willfulness" is

relevant to two distinct  FLSA questions: 1) whether Mr. Koellhoffer, if successful in

demonstrating a violation, will be entitled to liquidated double damages, 29 U.S.C. §216(b); and

2) whether Mr. Koellhoffer's claims are subject to a two or three year statute of limitations.  29

---

[3] Sometime after the USDOL investigation, the Colorado Division of Labor ("CDOL")
responded to a complaint by Mr. Koellhoffer under Colorado state law. (Plotke-Giordani Aff. at
Exhibit E, CDF000034).  CDOL did not conduct an independent investigation but instead simply
relied on USDOL in concluding that "if the duties involve customer service, *it appears to be
okay* if managers receive ten percent of the tips." *Id*. (emphasis added).

U.S.C. §255.  Although the recovery of liquidated damages and the application of a three year

limitations period both require Defendants to have acted willfully, the term is construed

differently in each context.  *Fowler v. Incor*, 2008 WL 2019598, *9 (10th Cir. 2008) ("Although

a standard of willfulness applies to both liquidated damages and the statute of limitations under

the FLSA, the definitions and burdens of proof differ for each.")

### 1.    There are Fact Issues as to Mr. Koellhoffer's Entitlement to Liquidated Damages.

"Ordinarily, an employer who violates the FLSA is liable for both unpaid wages and an

additional equal amount as liquidated damages."  *Garcia v. Tyson Foods, Inc.,* 766 F.Supp.2d

1167, 1183 (D.Kan. 2011).  This additional compensation is "'not a penalty exacted by the law,

but rather compensation to the employee occasioned by the delay in receiving wages due caused

by the employer's violation of the FLSA.'"  *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202

(10th Cir. 2004) citing *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 142 (2d Cir. 1999).

"'[T]he purpose for the award of liquidated damages is the reality that the retention of a

workman's pay may well result in damages too obscure and difficult of proof for estimate other

than by liquidated damages.'"  *Id*. citing *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1540

(10th Cir. 1991).

To avoid liquidated damages, an employer must demonstrate "that the act or omission

giving rise to such action was in good faith and that he had reasonable grounds for believing that

his act or omission was not a violation of the FLSA . . . ."  29 U.S.C. §260.  To demonstrate such

good faith, the "employer bears the burden of proving an honest intention to ascertain and follow

the dictates of the [FLSA and] must also prove its position was objectively reasonable."

*Hultgren v. Cty. of Lancaster, Neb.,* 913 F.2d 498, 509 (8th Cir. 1990).  In satisfying this burden, "[i]gnorance alone will not exonerate the employer under the objective reasonableness test." *Williams v. Tri-Cty. Growers, Inc.,* 747 F.2d 121, 129 (3rd Cir. 1984).  "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." *Id.*

An issue of fact exists as to Mr. Koellhoffer's entitlement to liquidated damages because Defendants' tip policy was not "objectively reasonable."  As explained in Section III(B), above, by diverting Mr. Koellhoffer's tips to high level managers, Defendants violated the FLSA.  Since applicable case law makes clear that Defendants' tip policy was invalid, that policy cannot have been reasonable to the objective observer and Mr. Koellhoffer is entitled to additional compensatory (non-punitive) liquidated damages.

Second, with regard to the second element of the defense to liquidated damages - whether Defendants acted in good faith reliance on USDOL's failure to find a violation – such good faith could be shown only if Defendants honestly and completely disclosed all relevant information to the USDOL investigator.  *Mumby v. Pure Energy Serv. (USA), Inc.,* 636 F.3d 1266, 1270 (10th Cir. 2011) (to rely on advice of counsel to demonstrate good faith, the employer must show "full disclosure of the relevant facts to counsel . . . ."); *Chao v. Vidtape, Inc.,* 196 F.Supp.2d 281, 295 (E.D.N.Y. 2002) (willfulness shown where employer lied to USDOL investigator).

To meet their burden of showing good faith, Defendants have submitted notes from the USDOL investigator.  (Plotke-Giordani Affidavit at Exhibit B), attached to the Motion.  In those notes, the USDOL investigator recorded the information provided by Ms. Plotke-Giordani to support her claim that Defendants' managers were proper tip pool participants.  *Id.* at

CDF000082.  According to the notes, Ms. Plotke-Giordani told the investigator that managers were not acting on her behalf because she "micro-manages" the restaurant as an owner.  *Id*. Furthermore, Ms. Plotke-Giordani represented that "all major decisions must be passed by her and she is involved in all employee matters including hiring and firing."  *Id*.  This also is consistent with her testimony to this Court in Paragraph 14 of her Affidavit.

The foregoing representations are contradicted by the testimony of Mr. Koellhoffer who maintains that Ms. Plotke-Giordani and the other owners were rarely in the restaurant and that day-to-day restaurant operations were handled by the restaurant managers.  (Koellhoffer Decl. at ¶¶6-10).  Moreover, these representations are called in to doubt by Defendants' own Manager Job Description, which states that a manager's responsibilities include a number of high level management functions, *e.g*., hiring and firing.  Thus, Defendants have failed to meet their burden to show their good faith through "plain and substantial evidence".

## 2.        There are Fact Issues as to the Applicable Limitations Period.

The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies.  *Mumby,* 636 F.3d at 1270; 29 U.S.C. § 255(a).  "To fall under the three-year limitation, the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'"  *Id*. citing *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Mumby*, 636 F.3d at 1270 citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007).

As discussed in Section III(C)(1), above, there are disputed fact issues as to whether

Defendants were completely forthcoming with USDOL regarding the level of operational control

provided by Defendants' management team.  If Defendants were not forthcoming, they at least

showed reckless disregard for whether their tip policy was FLSA compliant.  Moreover, given

the lack of *any* authority allowing the participation of high level managers in a tip pool,

Defendants' violation was "so obvious that it should [have been] known."  *Id*.  Under such

circumstances, there is a fact issue as to whether Mr. Koellhoffer is entitled to the protections of

a three year limitations period.

**D.      Conclusion**

By handling goods and materials from around the world and selling them to foreign and

domestic tourists, Defendants "engaged in commerce" and, therefore, are subject to FLSA

jurisdiction.  As well, because Defendants have not met their burdens of proving they acted in

good faith and that their managers were not acting in their interest, fact issues remain as to

Defendants' liability.

WHEREFORE, Plaintiff respectfully requests the Court to deny *Defendant's F.R.C.P. 56*

*Motion for Summary Judgment* in its entirety.

RESPECTFULLY SUBMITTED this 7th day of November, 2011.

*s/Brian D. Gonzales*

Brian D. Gonzales
THE LAW OFFICES OF
BRIAN D. GONZALES, PLLC
123 North College Avenue, Suite 200
Fort Collins, Colorado  80524
Telephone: (970) 212-4665
Facsimile: (303) 539-9812
BGonzales@ColoradoTrialLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on November 7, 2011, the foregoing **RESPONSE IN OPPOSITION TO DEFENDANT'S F.R.C.P. 56 MOTION FOR SUMMARY JUDGMENT** was served electronically on Plaintiff and on the following:

James D. Kilroy, Esq.
Christine McCallister Garrison, Esq.
SNELL & WILMER, L.L.P.
1200 17th Street, Suite 1900
Denver, Colorado 80202

*s/Brian D. Gonzales*