IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02820-WYD-CBS

GARTH KOELLHOFFER, on behalf of himself and all similarly situated persons,

      Plaintiff,

v.

ELIZABETH PLOTKE-GIORDANI and LUIGI GIORDANI, both individuals; and
I SCOPPIATI, INC., d/b/a Campo De Fiori Ristorante, a Colorado corporation,

      Defendants.

---

## ORDER ON SUMMARY JUDGMENT

---

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Defendants' F.R.C.P. 56 Motion for

Summary Judgment filed August 12, 2011.  A response was filed on November 7, 2011,

and a reply was filed on November 23, 2011.  For the reasons discussed below,

Defendants' summary judgment motion is denied.

II.    <u>FACTUAL BACKGROUND</u>

      Defendant I Scoppiati, Inc., d/b/a Campo De Fiori Ristorante, owns and operates

an Italian food restaurant located in Vail, Colorado known as Campo De Fiori Ristorante

["Campo De Fiori"].  Defendants Elizabeth Plotke-Giordani and Luigi Giordani each own

47.5% of Campo De Fiori, with the remaining 5% interest owned by Simone Reatti.

Campo De Fiori is a local restaurant serving local customers and visitors to Vail.

Plaintiff Garth Koellhoffer ["Plaintiff"] was employed at Campo De Fiori from approximately February 1, 2006 until April 19, 2010.  During that time, Plaintiff worked as a server, with the exception of the 2006 winter season when he was employed as a bartender.[1]  In his First Amended Complaint, Plaintiff alleges a single claim for relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* [the "FLSA"].

It is the policy of Campo De Fiori that servers pool all tips received from customers at the end of each shift.  The tips are then distributed to all tip-pool participants according to a set formula provided by the restaurant.  The following Campo De Fiori employees participate in the tip-pool:  servers, table bussers, food runners, bartenders and managers.  All employees who participate in the tip-pool, including managers, perform customer services such as seating customers, taking food and drink orders, delivering food, clearing plates and setting tables.  Each employee who participates in the tip pool regularly receives more than $30 a month in tips.

While Plaintiff worked as a bartender at Campo De Fiori, he received tips from, but did not contribute tips to, the tip-pool.  While Plaintiff worked as a server at Campo De Fiori, he contributed tips to the tip-pool and received a percentage of pooled tips back from the tip-pool at the end of each shift.

---

[1]  As a bartender, Plaintiff's job duties included taking drink orders and serving customers drinks, restocking the bar area, taking inventories of drinks served from the bar area, informing managers and servers of out-of-stock or "86ed" items, cleaning the bar area, and assisting managers and hosts with answering the telephone and greeting guests.  As a server, Plaintiff's job duties included setting tables, restocking service items and waiter stations, familiarizing himself with daily food specials and out of stock or "86ed" food items, greeting and seating customers, taking and placing customer food and drink orders, communicating with managers regarding table status, assisting food runners and table bussers, taking customer payment, and cleaning the dining room area.

In 2002, Campo De Fiori was randomly audited by the United States Department of Labor ["USDOL"].  The USDOL examined Campo De Fiori's tip-pooling policy and the inclusion of the restaurant's managers in the tip-pool.  In the USDOL's "Disposition" of its investigation, it found based on interviews "that a majority of the manager's time was actually being spent on the floor of the restaurant taking orders, seating customers, running food and helping to bus tables."  (Defs.' F.R.C.P. 56 Mot. for Summ. J., Ex. C to Plotke-Giordani Affidavit [hereinafter "Def.'s Mot. and "Plotke-Giordani Aff."].  Further, the "Disposition" notes that the owner, Elizabeth Plotke-Giordani, said "she micro-manages as an owner".  (*Id.*; *see also* Plotke-Giordani Aff., ¶¶ 13-14).  The USDOL investigator also reported:  Ms. Plotke-Giordani told him that "[a]ll major decisions must be passed by her and she is involved in all employee matters including hiring and firing" and that "she was of the opinion that the managers should be classified as nonexempt and that she would pay them overtime and allow them to be included in the tip pool on shifts where they were performing the duties of tipped employees.  (Ex. C to Plotke-Giordani Aff.)  Defendants also assert in reliance on Ms. Plotke-Giordani's Affidavit that Camp De Fiori's managers do not make hiring and firing or compensation decisions, and that these decisions are ultimately made by the restaurant's owners or executive chef.  (Plotke-Giordani Affidavit, ¶ 14).

Plaintiff disputes the accuracy of the statements as to the managers' role and the role of Ms. Plotke-Giordani at the restaurant as made in the USDOL Disposition and in the Affidavit of Ms. Plotke-Giordani.  Plaintiff attaches his own Declaration providing information about the roles of the managers and the owners as well as the job

description of a manager provided in Defendants' discovery responses which he asserts

contradicts the statements in the Disposition and in Ms. Plotke-Giordani's Affidavit.

(Pl.'s Decl. at ¶¶ 6-10, Ex. 1 to Pl.'s Resp. to Defs.' Mot. [hereinafter "Pl.'s Resp."]; Defs.'

discovery responses, Ex. 2 to Pl.'s Resp.)

In the job description of a manager provided by Defendants in discovery, a

manager's duties include, among other things in regard to service:  greeting guests;

interacting with and monitoring guest satisfaction throughout the shift; aiding in selling

wine, beverage and food; monitoring employee performance and satisfaction; supporting

waiter, runner, busser and bartender work; and addressing and resolving customer and

employee issues as they arise.  (Ex. 2 to Pl.'s Resp.)  Other duties include creating a

weekly schedule for floor employees, monitoring employee performance and preparing

evaluations in accordance with company policy; interviewing, hiring and firing as needed;

preparing and maintaining annual operating budget; and addressing and handling all

general maintenance requirements of the restaurant.  (*Id.*)

In his Declaration, Plaintiff states that when Campo De Fiori was open, "there was

always at least one manager working and overseeing operations", and as a result, there

was always one manager "taking a share of my tips."  (Pl.'s Decl., ¶ 6, Ex. 1 to Pl.'s

Resp.)  He also states as to the role of the manager:

> When Campo De Fiori was open for business, the manager on duty at the
> time would be in charge of all operations.  Although this manager would assist
> other employees as needed, his or her primary role remained management.
> The manager supervised all employees, directed and delegated work.  Even
> when they performed service functions, the managers were
> contemporaneously performing management functions such as, for example,

supervising employees.  The managers always had discretion to determine when, where and how they performed their jobs.

The managers prepared the work schedules and determined when and where the Campo De Fiori employees worked.  They trained and disciplined employees and, if there was a problem at the restaurant, the employees took the problem to the manager.  I always viewed the managers as my bosses and as the people "in charge."

When I applied for employment at Campo De Fiori, Mr. Bosco hired me on the spot and I went to work that same night.  To my knowledge, the Giordani's had no involvement in my hiring (they certainly never interviewed me).  Mr. Bosco also terminated me, again without any apparent assistance from the Giordanis.  In my experience, Mr. Bosco was primarily responsible for hiring, firing and disciplining employees.

(*Id.*, ¶¶ 6, 8-10.)

Plaintiff estimated in his Declaration that during his four years of employment, he saw Ms. Plotke-Giordani in the restaurant only six or seven times, and Luigi Giordani only once.  (Pl.'s Decl., ¶ 7, Ex. 1 to Pl.'s Resp.)  Plaintiff stated he would be surprised if either of the Giordanis even know who he was prior to his challenge to their tipping systems.  (*Id.*)  Finally, he stated that the Giordanis did not appear to have any active experience in the day-to-day management of the restaurant and, in his experience, the management role was filled solely by the General Manager, Mr. Bosco, and his assistants.  (*Id.*)

Defendants move to strike the above cited portions of Plaintiff's Declaration, arguing that the statements are self-serving, are not based on personal knowledge, and are speculative and conclusory.  I note on this issue that while evidence at the summary judgment stage "need not be submitted 'in a form that would be admissible at trial. . .', 'the content or substance of the evidence must be admissible.'"  *Argo v. Blue Cross and*

*Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quotations omitted).

Thus, an affidavit must be based on personal knowledge, and "is inadmissible if 'the

witness could not have actually perceived or observed that which he testifies to.'"   *Id.*

(internal quotation marks and quotations omitted).   "'[S]tatements of mere belief' in an

affidavit must be disregarded."   *Id.* (quoting *Tavery v. United States*, 32 F.3d 1423,1427

n. 4 (10th Cir. 1994)).

I find that the statements in Plaintiff's Declaration are admissible at this stage of

the litigation as they appear to be based on personal knowledge.  Plaintiff stated in his

Declaration that "[t]hrough my years of work . . at Camp De Fiori, I am very familiar with

the job duties of the Camp De Fiori management."  (Koellhoffer Decl., ¶ 6, Ex. 1 to Pl.'s

Resp.)  His statements of those job duties and other statements in the Declaration

appear to be based directly on personal observation, knowledge, or experience.

Accordingly, I decline to strike them as inadmissible.  Further, Plaintiff's belief that the

managers were able to hire and fire is supported by the description of the job duties of a

manager provided in discovery by Defendants, as well as his own experience with being

hired and fired.

Ultimately, according to Defendants, the USDOL determined that Campo De

Fiori's tip-pooling policy did not violate the FLSA.  (Plotke-Giordani Aff., ¶ 13.)  Plaintiff

disputes this, stating that the citation to the record does not support this and that

although the investigator did not pursue the matter further, there was no affirmative

finding of compliance.  I note that while the report of the USDOL does not actually make

an affirmative finding of compliance, it does not cite to any violation of the tip pooling provisions of the FLSA and recommends administrative closure of the case.  (Ex. C to Plotke-Giordani Aff.)

In April 2010, Plaintiff filed a complaint with the Colorado Department of Labor and Employment- Division of Labor ["Colorado DOL"] claiming that Campo De Fiori's tip-pooling policy violated Colorado Minimum Wage Order 26 because the restaurant allowed managers to participate in the tip-pool.  (Ex. D to Plotke-Giordani Aff.)  The Investigator Notes from the Colorado DOL's investigation of Plaintiff's claim states that Campo De Fiori's tip-pooling policy "was reviewed in 2004 both by USDOL and our office and everything appeared to be proper then."  (Ex. E to Plotke-Giordani Aff.)

The Claim Detail indicates that on June 23, 2010, the Colorado DOL issued a letter to Campo De Fiori stating that "it appears that [Plaintiff] has been properly compensated in accordance with Colorado wage law," that "no further action is contemplated by this office", and that Plaintiff "may pursue this mater in an appropriate court. . . ."  (Ex. E to Plotke-Giordani Aff."]  This finding appears to have been made in reliance on the USDOL's investigation discussed above.  (*Id.*)  There were no changes in Campo De Fiori's tip-pooling policy between the time that it was audited by the USDOL and April 2010 when Plaintiff's employment was terminated.

Defendants assert that from 2002 through the present, they have operated with the express understanding that their tip-pool complies with all applicable federal rules and regulations, including section 206 of the Fair Labor Standards Act.  Plaintiff asserts

in response that there is a disputed issue of fact as to whether Defendants fully disclosed information to the USDOL investigator.

Finally, Plaintiff asserts that Defendants did not notify him of their intent to take the tip credit against his minimum wages.  Defendants assert that Plaintiff knew of the policy by virtue of his own preparation of tip-pooling paperwork.  In addition, Defendants assert that the State of Colorado requires the posting of certain information in the form of "Minimum Wage Order Posters", and Defendants always complied with this requirement. The posters that were posted at the workplace purportedly contained the very information that Plaintiff suggests he did not receive directly from Defendants.

III.   ANALYSIS

A.   Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/ CMS Healthcare Corp.*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"  *Id.* (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

      B.     <u>The Merits of the Summary Judgment Motion</u>

          1.     <u>Lack of Subject Matter Jurisdiction</u>

While Defendants initially alleged in their motion that this Court lacked subject matter jurisdiction over this case because Defendants were not engaged in commerce, they withdrew this argument in their reply brief.  Accordingly, Defendants' Motion for Summary Judgment is denied on this ground.[2]

          2.     <u>Whether the Tip-Pooling Policy Violates the FLSA</u>

Defendants contend that based on what Campo De Fiori's managers actually did on the job, they were the type of employees who regularly and customarily receive tips.  Second, Defendants argue as a matter of law that Campo De Fiori's managers were not "employers" under the FLSA, and Plaintiff's only evidence in support of his claim to the contrary is a self-serving declaration lacking personal knowledge.  Accordingly, Defendants contend that they did not violate the FLSA by allowing the managers to participate in the tip-pool.  Third, while Plaintiff suggests that Defendants failed to notify

---

[2] I also have omitted the facts relevant to this argument.

him of the tip-pooling policy at issue, Defendants argue that it is undisputed that Plaintiff

had actual notice of the tip-pooling policy and how it worked.   Accordingly, Defendants

contend that their tip pooling policy complies with the FLSA.

Turning to my analysis, the FLSA requires "Employers" to pay a minimum wage.

29 U.S.C. § 206(b).   In determining the wage of a tipped employee, an Employer may

take a "tip credit" against the amount required to be paid to such employees [29 U.S.C.

§ 203(m)] but all tips received by the employee must be retained by the employee.   28

U.S.C. § 203(m)(2).   The requirement that an employee must retain all his tips, however,

does not prohibit the pooling of tips among employees who customarily and regularly

receive tips.   28 U.S.C. § 203(m)(2).   The requirement does prohibit, however, an

"Employer" under the FLSA from sharing in the tip pool.   *See, e.g., Wright v. U-Let-Us-*

*Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217 (D. Colo. 1985).   Thus, when an individual

is alleged to have improperly shared in a tip pool, such as the managers in this case,

there are two questions that must be addressed.   First, is the individual an employee who

"customarily and regularly receives tips"?   Second, is the individual an "Employer" under

the FLSA?

Plaintiff does not dispute that Defendants' managers were the types of employees

who "customarily and regularly receive tips".   28 U.S.C. § 203(m).   Indeed, I find that they

were the types of employees who "customarily and regularly receive tips" as they were

engaged in an occupation where undesignated tips are common, and they performed

important customer service functions.   See *Kilgore v. Outback Steakhouse of Florida,*

*Inc.*, 160 F.3d 294, 301-02 (6th Cir. 1998).   The job description of managers provided by

Defendants states that they greet guests, interact with and monitor guest satisfaction throughout the shift, aid in selling wine, beverage and food, and address customer issues as they arise.  (Pl.'s Resp., Ex. 2.)

The real issue is whether Campo De Fiori's managers are "employers" within the meaning of the FLSA such that they were prohibited from sharing in the tip pool.  The FLSA defines an "Employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"  *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).  "An entity 'suffers or permits' an individual to work if, as a matter of 'economic reality', the entity functions as the individual's employer."  *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (citing *Goldberg v. Whitaker House Coop, Inc.*, 366 U.S. 28, 33 (1961); *see also Herman v. RSR Security Servs., Ltd.*, 173 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case.").

The Tenth Circuit has adopted the economic reality test for determining an employment relationship.  *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1439 (10th Cir. 1998).  The *Baker* court held that "[t]he economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."  *Id.* (citing *Watson v. Graves,*

909 F.2d 1549, 1553 (5th Cir. 1990)); *see also Herman*, 172 F.3d at 139.  In determining

whether a particular individual is an employers, courts have also looked at the level of

operational control the individual had over the company, meaning that the individual is

either "involved in the day-to-day operation or have some direct responsibility for the

supervision of the employee.'"  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515

F.3d 1150, 1160 (11th Cir. 2008) (quotation omitted); see also *Herman*, 172 F.3d at 140.

I find that there are genuine issues of material fact as to whether the managers of

Campo De Fiori were employers under the economic realities test.  While Defendants

argue that Plaintiff did not introduce admissible evidence in support of this contention, I

rejected this argument previously.  According to that evidence, and construing the

evidence in the light most favorable to Plaintiff, the managers had authority to hire and

fire employees, supervise and control employee work schedules or conditions of

employment, and maintain employment records.  Indeed, the job description of the

managers provides that managers set the weekly schedule for floor employees,

monitored employee performance and satisfaction and prepared evaluations of the

employees, addressed and resolved employee issues as they arose, and interviewed,

hired and fired as needed.

While there is no evidence that the managers determined the rate or method of

payment, the job description of the managers said they prepared and maintained the

annual operating budget.  This could include the rate of pay of the employees.

Nonetheless, I find that factor is not dispositive.  *See Kaur v. Royal Arcadia Palace, Inc.*,

643 F. Supp. 2d 276, 293 (E.D.N.Y. 2007) ("No single factor standing alone is

dispositive. . . . Instead, the 'economic reality' test encompasses the totality of circumstances.")  Again, the overarching concern is whether the managers "possessed the power to control" Plaintiff and the other employees.  *Herman*, 172 F.3d at 139; *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615, 627 (S.D.N.Y. 2011); *see also Kaur*, 643 F. Supp. 2d at 293   Again, I find that there are genuine issues of material fact about this based both on Plaintiff's Declaration and the job description of a manager.[3] Accordingly, I find that there are genuine issues of material fact about whether the managers' participation in Campo De Fiori's tip pool policy violated the FLSA because they were "employers".

Defendants assert, however, that the Court need not even undertake the analysis of whether Campo De Fiori's tip-pooling policy violates the FLSA since the USDOL previously determined that Defendants' tip-pool policy was compliant.  They cite *Tierdael Constr. Co. v. OSHRC*, 340 F.3d 1110, 1114 (10th Cir. 2003) ("'When the meaning of a regulatory provision is clear on its face, the regulation must be enforced in accordance with its plain meaning.' If the regulation is ambiguous, this court must give substantial deference to the agency's interpretation of the regulation.") (quoting *Walker Stone Co., Inc. v. Sec'y of Labor*, 156 F.3d 1076, 1080 (10th Cir. 1998)).  Defendants argue that

---

[3]   I find the cases relied on by Defendants to be distinguishable.  In *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1990), while the court found that the maitre d' of a restaurant was not an "employer" within the meaning of the FLSA and was eligible to participate in the tip pool, this was based on the fact that he did not hire and fire employees, control the methods of operation at the restaurant, set hourly wages, or control the payroll.  In *Rudy v. Consolidated Restaurant Companies, Inc.*, No. 3:08-CV-0904-L, 2010 WL 3565418*(N.D. Tex. Aug. 18, 2010), while the maitre d's at the restaurant had the authority to interview new hires, the final decision on hiring and firing belonged to the proprietor.  *Id.* at *7. Further, their duties regarding operational control of the restaurant were much less than in this case per the evidence presented by Plaintiff.

since the USDOL in 2002 investigated Defendants' tip-pool policy and found Defendants' policy to be in compliance with the FLSA, the Court should give deference to this finding and likewise conclude that Defendants' tip-pool policy did not violate the FLSA.  I reject this argument.

According to USDOL, "[t]he ultimate decisions on interpretations of the [FLSA] are made by the courts."  29 C.F.R. § 785.2.  Thus, courts are to defer to USDOL interpretative regulations "only to the extent they have the power to persuade."  *Fowler v. Incor*, No. 05-7113, 2008 WL 2019598, at *7 (10th Cir. 2008) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138, (1944)).  "Similarly, the courts are not bound by informal administrative opinions; instead, interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference.'" *Id.* (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)).

Here, Defendants are not asking the Court to defer to interpretations of the FLSA made in a regulation, but to the results of a field investigation, *i.e.*, the notes and conclusions of a single USDOL investigator.[4]  Such an investigation does not even rise to the level of an opinion letter or other statement of agency enforcement policy,  Therefore, I find that it is not entitled to deference by the Court.

---

[4]  The Colorado DOL did not appear to conduct an independent investigation but instead simply relied on USDOL in concluding that "if the duties involve customer service, *it appears to be okay* if managers receive ten percent of the tips."  (Ex. E to Plotke-Giordani Aff. at CDF000034) (emphasis added).

Based on the foregoing, Defendants' summary judgment motion is denied as to the issue of whether the tip-pool policy allowing managers to participate violated the FLSA.

Defendants' summary judgment motion is granted, however, as to the argument by Plaintiff that he failed to receive notice of the tip-pooling policy.  If employees ordinarily receive customer tips in the course of their employment, the employer may take a tip credit.  29 U.S.C. § 203(m).  To be eligible for the tip credit, the employer must first notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit.  *See Kilgore*, 160 F.3d at 298; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008).

In this case, while Plaintiff asserts that Defendants did not directly notify him of their intent to take the tip credit against his minimum wages, he does not dispute the evidence that he knew of the policy by virtue of his own preparation of tip-pooling paperwork.  In addition, he does not dispute the fact that Defendants complied with the requirement of the State of Colorado of posting of certain information in the form of "Minimum Wage Order Posters", and that these posters at the workplace contained the information about the tip credit.

3.    Whether Defendants Willfully Violated the FLSA

The final issue is whether Defendants knowingly, willfully and recklessly violated the FLSA.  Defendants assert that even if there was a violation of the FLSA in connection with the tip-pooling policy, any such violation falls far short of a knowing, willful or reckless violation as a matter of law since they were acting with the understanding that

the USDOL and Colorado DOL found that their policy complied with state and federal law.  Consequently, Defendants argue that Plaintiff's claim that Defendants knowingly, willfully or recklessly violated the FLSA should be dismissed as a matter of law.

As Plaintiff notes in response to Defendants' argument, a finding of "willfulness" is relevant to two distinct questions: 1) whether Plaintiff, if successful in demonstrating a violation, will be entitled to liquidated double damages, 29 U.S.C. §216(b); and 2) whether Plaintiff's claims are subject to a two or three year statute of limitations.  29 U.S.C. §255.  Although the recovery of liquidated damages and the application of a three year limitations period both require Defendants to have acted willfully, the term is construed differently in each context.  *Fowler*, 2008 WL 2019598, at *9 ("Although a standard of willfulness applies to both liquidated damages and the statute of limitations under the FLSA, the definitions and burdens of proof differ for each.")

As to the first issue regarding liquidated damages, Plaintiff argues that there are fact issues as to his entitlement to such damages.  I note that "[o]rdinarily, an employer who violates the FLSA is liable for both unpaid wages and an additional equal amount as liquidated damages."  *Garcia v. Tyson Foods, Inc.,* 766 F. Supp. 2d 1167, 1183 (D. Kan. 2011).  This additional compensation is "'not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA.'"  *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).  "'[T]he purpose for the award of liquidated damages is the reality that the retention of a workman's pay may well result in damages too obscure and difficult of

proof for estimate other than by liquidated damages.'" *Id.* (citing *Renfro v. City of Emporia*, *Kan.,* 948 F.2d 1529, 1540 (10th Cir. 1991)).

To avoid liquidated damages, an employer must demonstrate "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA . . . ." 29 U.S.C. § 260. "[T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2nd Cir. 1997). To demonstrate such good faith, the "employer bears the burden of proving an honest intention to ascertain and follow the dictates of the [FLSA and] must also prove its position was objectively reasonable." *Hultgren v. Cty. of Lancaster, Neb.,* 913 F.2d 498, 509 (8th Cir. 1990).

In satisfying this burden, "[i]gnorance alone will not exonerate the employer under the objective reasonableness test." *Williams v. Tri-Cty. Growers, Inc*, 747 F.2d 121, 129 (3rd Cir. 1984). "It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich*, 121 F.3d at 71. "The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.'" *Id.* (quotations omitted); *accord Herman,* 172 F.3d at 142. "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." *Williams*, 747 F.2d at 129.

I find that there are genuine issues of material fact as to whether Defendants acted willfully in violating the FLSA. First, even though the USDOL investigated the tip

pool policy and did not find it to be invalid, an issue of fact still exists as to whether Defendants' tip policy was "objectively reasonable". The notes from the USDOL investigator indicate that he recorded the information provided by Ms. Plotke-Giordani to support her claim that Defendants"managers were proper tip pool participants. (Ex. E to Plotke-Giordani Aff.) According to the notes, Ms. Plotke-Giordani told the investigator that managers were not acting on her behalf because she "micro-manages" the restaurant as an owner. *Id*. Furthermore, Ms. Plotke-Giordani represented that "all major decisions must be passed by her and she is involved in all employee matters including hiring and firing." *Id*. This also is consistent with her testimony to this Court in Paragraph 14 of her Affidavit. The foregoing representations are contradicted by the testimony of Plaintiff in his Declaration that Ms. Plotke-Giordani and the other owners were rarely in the restaurant and that day-to-day restaurant operations were handled by the restaurant managers. (Pl.'s Decl. at ¶¶ 6-10). Moreover, these representations are called in to doubt by Defendants' own Manager Job Description, which states that a manager's responsibilities include a number of high level management functions, *e.g.*, hiring and firing.

Based on the description of the managers' roles in both Plaintiff's Declaration and in the job description provide by Defendants, a reasonable jury could find that the managers had a much more substantial role in the operation of Campo De Fiori than claimed by Defendants, and that they possessed the power to control Plaintiff and the other employees as noted in the previous section. If the managers actually had this type

of control, it would not have been objectively reasonable for Defendants to include them in the tip pool, regardless of the findings of the USDOL.

This ties into the issue of Defendants' good faith.  I also find that there is a genuine issue of material fact on this issue.  A reasonable jury could find from the evidence that Defendants were not completely honest to the USDOL investigator about the role of the managers and the level of their control over the employees and the restaurant.  If Defendants did not honestly and completely disclose all relevant information, than the good faith defense would not appear to be applicable.  *See Mumby v. Pure Energy Serv. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (to rely on advice of counsel to demonstrate good faith in FLSA action, the employer must show "full disclosure of the relevant facts to counsel . . . ."); *Chao v. Vidtape, Inc.,* 196 F. Supp. 2d 281, 295 (E.D.N.Y. 2002) (willfulness shown where employer told employees to lie to USDOL investigator about their wages and hours worked); *see also United States v. Rozin*, No. 11-3186, 2012 WL 28643, at *7 (6th Cir. Jan. 6, 2012) (a defendant cannot mount a credible good faith reliance on accountant's advice defense where he did not provide full information to those he relied on).  Accordingly, I find that Defendants' summary judgment motion should be denied as to the issue of willfulness in connection with liquidated damages.

Plaintiff also argues that there are fact issues as to the applicable limitations period.  The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies. *Mumby,* 636 F.3d at 1270; 29 U.S.C. § 255(a).  "'To fall under the three-year limitation,

the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'" *Mumby*, 636 F.3d at 1270 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)); *see also Reich v. Montfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998) (the standard for determining whether a violation of the FLSA is willful, knowing or reckless "is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]'" (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Again, Plaintiff asserts that there are disputed fact issues as to whether Defendants were completely forthcoming with USDOL regarding the level of operational control provided by Defendants' management team.  It is further argued that if Defendants were not forthcoming with these facts, they at least showed reckless disregard for whether their tip policy was FLSA compliant.  I agree, finding that there is a genuine issue of material fact as to whether Plaintiff is entitled to the protections of a three year limitations period.  Accordingly, I deny summary judgment on this issue.

IV.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendants' F.R.C.P. 56 Motion for Summary filed August 12, 2011 (ECF No. 46) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

Dated:  March 12, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge